## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ACCELERANT TWISTER, LLC, and
ACCELERANT HOLDING, LLC,

                Plaintiffs,

      v.

MARJO, LLC and JOHN T. SULLIVAN,

                Defendants.

Case No.

## COMPLAINT

Plaintiffs Accelerant Twister, LLC ("Twister") and Accelerant Holding, LLC ("Holding"), collectively (the "Plaintiffs"), by their undersigned counsel, hereby file this Complaint against Marjo, LLC ("Marjo") and John T. Sullivan ("Sullivan"), and allege as follows:

### I.      JURISDICTION AND VENUE

1.     This Court has personal jurisdiction over Defendants pursuant to the agreement of the parties in Twister's Amended and Restated Operating Agreement wherein the parties agreed to submit to the jurisdiction of the United States District Court for the District of Delaware for disputes arising out of or in connection with the Operating Agreement or the transactions contemplated thereby.

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332. There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

3.     Venue is proper in this Judicial District pursuant to 28 U.S.C. Section 1391(a).

## II.    PARTIES

4.      Plaintiff Twister (f/k/a Accelerant Manufacturing, LLC) is a limited liability company formed under the laws of the State of Delaware with its principal place of business located in Connecticut. Twister was formed for the purpose of manufacturing, leasing, licensing, and/or selling cannabis cone rolling equipment and CDB oil extraction and harvesting equipment.

5.      Plaintiff Holding is a limited liability company formed under the laws of the State of Delaware with its principal place of business located in Connecticut. Holding owns an approximately 84% equity interest in Twister. Holding was formed for the purpose of developing and marketing cannabis automation (outside of cannabis cone rolling) equipment, supporting Twister in its attempts to develop, produce and take to market pre-roll cone rolling equipment (filling and twisting) related hardware.

6.      Defendant Marjo is a limited liability company formed under the laws of the State of Maryland with its principal place of business located at 11339 Barley Field Way, Marriottsville, Maryland 21104. Marjo is the owner of an approximately 16% equity interest in Twister.

7.      Defendant Sullivan is a citizen of the State of Maryland with a residence at 11339 Barley Field Way, Marriottsville, Maryland 21104. Sullivan is the managing member of Marjo, LLC.

## III.    FACTS COMMON TO ALL COUNTS

### A.      Defendants' Introduction to Schuster, Ellman and Borom

8.      In approximately February 2019, Sullivan and Marjo were introduced to Grant Schuster ("Schuster"). Defendants were seeking to engage in business with Schuster's employer

2

for the purpose of vape pen filling automation. After showing Defendants the processes Schuster was using to make cannabis prerolls, Schuster inquired if Defendants were capable of developing cannabis cone rolling equipment. Sullivan stated that he had the ability to automate the process and develop cannabis cone rolling equipment.

9.     Based on Sullivan's representations in that first meeting and subsequent conversations, in approximately April 2019, Schuster introduced Defendants to Alan Ellman ("Ellman"), and Michael Borom ("Borom") as possibly being able to assist in the design and development of a cannabis cone rolling machine. Sullivan and Marjo made numerous representations to Schuster, Ellman and Borom to induce them to enter into a business relationship.

10.    Sullivan represented that he and his entity, Marjo, possessed the technical expertise and know-how to create and build a production cannabis cone rolling machine. He also represented that he had the knowledge, know-how and extensive personal connections from past efforts to select vendors and suppliers of equipment, software, fixtures and tooling to successfully build a prototype automatic cone filling, twisting and weighing machine.

11.    Sullivan also represented that he and Marjo had, during the months between his first meeting with Schuster and the April meeting with Schuster, Ellman and Borom, been engaged in the creation, design and development of a functional cannabis cone rolling machine. Defendants also represented that Marjo had spent considerable time, effort and expense during this period developing provisional patent pending designs, know-how and trade secrets for a machine that automates the cannabis cone rolling process.

12.     Defendants also represented that their cannabis cone rolling process was unique and something that would not be obvious or known to someone in the industry and, as such, would be patentable.

13.     Defendants further represented that they had not seen anything similar in their review of machines on the market or filings with the Patent Office.

14.     Defendants also represented in a June 30, 2019 Letter of Intent that they could develop a prototype of a functioning cannabis cone rolling machine for $55,000 of additional estimated consulting fees with an output of 2,000 units per hour.

15.     Defendants would not permit Schuster, Ellman and Borom to see any of the plans, filings or other supporting documents associated with Defendants' work until a non-disclosure agreement with non-compete restrictions was in place.

16.     In reliance on Defendants' representations regarding their experience, expertise and know-how in the design and development of a cannabis cone rolling machine, and their representations regarding the prototype, combined with the conditions put in place by Defendants prior to moving forward, Schuster, Ellman and Borom, and Defendants, entered into a non-disclosure agreement which prohibited the disclosure or use of Marjo's intellectual property and/or trade secret information as it related to the creation, design, manufacture, sale and/or leasing of cannabis cone rolling machines.

## IV.     FORMATION OF TWISTER AND RELEVANT AGREEMENTS

17.     Thereafter, also in reliance on Defendants' representations regarding their experience, expertise and know-how and the prototype, Schuster, Ellman and Borom agreed with Defendants to form Twister as a limited liability company in which Marjo, Schuster, Ellman and Borom would be equity owners and managing members.

4

18.     Twister was formed on or about September 3, 2019, and on or about September 9, 2019, Marjo, Schuster, Ellman and Borom executed an operating agreement for Twister.  The Operating Agreement was amended and restated as of February 7, 2020 (the "Operating Agreement").  In reliance on Defendants' representations, Schuster, Ellman and Borom agreed to give Marjo an equity interest in Twister, a large portion of which was protected from dilution. Marjo's contribution to Twister for which it received its equity was limited to Marjo's intellectual property, trade secrets and know-how; Defendants contributed zero dollars to the venture.

19.     On or about January 29, 2020, also in reliance on Defendants' representations, Twister entered into a licensing agreement with Marjo (the "License Agreement").  The License Agreement provides for issuance of equity to Marjo as Licensor.  The License Agreement also provides for aggregate various payments (excluding consulting fees for hours spent finalizing the prototype machine) by Twister to Marjo of at least $1,000,000 before December 31, 2022.

20.     On or about February 3, 2020, Twister and Marjo entered into a consulting agreement (the "Consulting Agreement") in which Marjo would be compensated for its time in designing, developing, and manufacturing of a cannabis cone rolling machine, and for Marjo to be eligible to receive additional performance-based incentive compensation.  Based on Defendants' representations, it was expected that Marjo would receive a total of approximately $80,000 to develop an acceptable functioning prototype.

## V.     DEFENDANTS' MISREPRESENTATIONS UNCOVERED

21.     Shortly after the above relevant agreements were signed, Defendants began work to design and develop a cannabis cone rolling machine, but it quickly became apparent that the

DM3\9115192.1

representations made to induce Schuster, Ellman and Borom to enter into business with Defendants had been materially false and misleading.

22.    For example, at the time of selecting the initial electro-mechanical partner to build the prototype, Schuster sought a quote from a leading company in automation design and manufacturing.  This company reviewed Defendants' designs and noted, contrary to Defendants' representations, that the designs were only 60% complete.  Concurrently, Sullivan sought a single quote from a small Maryland-based company with limited product development experience and insisted that his designs were complete and that the machine could be built to meet the business objectives.  Sullivan insisted on the selection of the small Maryland company.

23.    The Maryland company built the codebase on an antiquated platform and withheld the option to pursue coding on the most up-to-date platform.  As a result, Twister was required to spend unnecessary funds to re-program the entire machine.  Based on the quote from the Maryland company that relied on Defendants' representations, the expected completion date of the prototype was December 25, 2019.  The prototype was completed and installed on September 28, 2020 - nine (9) months behind schedule, and significantly over budget.

24.    Defendants represented orally and in writing on numerous occasions that their designed machine could be built.  For example, on June 13, 2019, Sullivan told Ellman and Borom that his design as reflected on a patent application could be built and would meet the conditions to make it viable in the market.  On June 30, 2019, Sullivan represented in a Letter of Intent that his design "automates the rolling process, weighs and controls the amount of cannabis in each cone, is [size] and can be built."  These representations were false.  The machine per Sullivan's design could not be built without substantial additional time and cost.  Critical

6

elements required for basic construction were omitted completely from the design, such as ways to connect parts, couplings, machined parts, and safety systems.

25.     Sullivan represented orally and in writing that the machine he designed would cost $80,000 or less and produce 2,000 units per hour. For example, on September 25, 2019, Sullivan represented in an email that the single groupset as designed and to be prototyped would produce 1,500 – 2,000 units per hour. Based on and in reliance on this representation, Schuster, Ellman and Borom created and shared business models with Sullivan prior to circulating a private placement memorandum to potential investors.

26.     After significant modifications and additions to Defendants' initial design, a prototype machine was made and tested with a beta customer, but this prototype failed to come close to the beta customer's expectations. The beta customer implored Schuster, Ellman and Borom to "hire a real automation partner," and asked Twister to remove the beta equipment from its premises, which Twister did. This unexpected, serious shortfall and subsequent withdrawal significantly jeopardized the Twister development and go-to-market timeline.

27.     Sullivan also knowingly misrepresented the costs of prototype development and the costs of developing a commercially acceptable machine. Sullivan reviewed and approved the private placement memorandum where he told potential investors that the production machine expense would be $80,000 and the output would be 2,000 units per hour. The License Agreement included these metrics as success caveats. The beta machine produced at a rate of only 80 per hour – only four percent of the targeted output.

28.     Twister's business plan was also prepared in reliance on Sullivan's cost and output projections and projected a 4 – 6-month payback on equipment. These projections were grossly inadequate.

29.    Despite continued failures to resolve issues, Defendants responded to the failures with demands for more money and time to develop the product.

30.    Defendants' inability to design and develop a working prototype of the machine for the amount promised and in the promised timeframe, as well as repeated delays and requests for substantial additional funds, made it apparent that Defendants had misrepresented their experience and expertise in designing and developing cannabis cone rolling machines. Defendants' false representations therefore wrongfully induced Schuster, Ellman and Borom to provide a substantial equity interest in Twister, and wrongfully induced Twister to enter into the License Agreement and Consulting Agreement.

31.    Twister paid Marjo approximately $126,000 under the Consulting Agreement, in addition to payments to mechanical engineers and system developers, to develop a working prototype of a cannabis cone rolling machine, despite Defendants' representations that they had already spent significant time and money preparing to produce a working prototype. Despite being paid for the additional effort, Marjo still was unable to produce a working prototype. In September 2020 (prior to the expiration of the Consulting Agreement), Borom told Sullivan that Twister could no longer afford Defendants' fees and asked Defendants to stop charging as Twister had paid approximately $262,000 to Defendants' recommended software and mechanical firms and approximately $36,000 to a mechanical engineer to convert Defendants' concepts into machinable components, in addition to the approximately $126,000 paid to Defendants. This amounted to $424,000, far more than originally estimated by Defendants, and a working prototype as defined in the Consulting Agreement was nowhere in sight. Borom made it clear that all elements of the Consulting Agreement were still in place and, if a prototype was developed that met the bonus conditions outlined in the Consulting agreement, the bonus would

DM3\9115192.1

be paid.  Borom also made it clear that Sullivan  could continue to guide the project in an effort to earn bonuses but that Defendants would no longer be compensated for time.  Sullivan  continued to attend status and update calls.  The Consulting  Agreement subsequently  expired on September 1, 2021.

32.     Upon expiration  of the Consulting  Agreement, Twister did not renew it.  Instead, Twister contracted with other manufacturers, engineers and software designers to design and develop, *de novo*, a cannabis cone rolling  machine to meet the business and market requirements.

33.     During a video conference sometime  between August 19 and September 5, 2019, Sullivan  explained the elements of the current machine to the Twister's new vendor under a non-disclosure  agreement.  After this call and with additional  exploration,  it was concluded that the then current design would have to be scrapped and an entirely new approach to every station and cone handling  (the core elements of the machine) would have to be designed.

34.     Starting  fresh with the assistance of these other vendors, Twister has now developed a functioning  cannabis cone rolling  machine that does not use any of Marjo or Sullivan's  intellectual  property, technology,  trade secrets or know-how,  nor does it use any technology  derivative  of Marjo or Sullivan's  technology.

35.     In or about June 2021, Schuster, Ellman and Borom formed Holding  and thereafter, the holders of the common ownership  interests of Twister, including  Marjo, were given the opportunity  to exchange tax-free their Twister common ownership units for a corresponding  membership interest in Holding.  All holders of Twister's common ownership units, except Marjo, agreed to exchange their common units in Twister to units in Holding,  and the exchange was approved by a majority  of Twister's board of directors.

DM3\9115192.1

36.     Defendants have wrongly contended that the exchange of Twister common units to Holding units required a vote of 90% of Twister's equity ownership interests. This contention is not correct.

37.     Defendants have also wrongly contended that Holding is precluded by a non-competition clause in the License Agreement from engaging in any cannabis-related activities. This contention is not correct.

**COUNT I – DECLARATORY JUDGMENT**
**MARJO INTEREST IN TWISTER**

38.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1-37.

39.     There exists an actual controversy between Twister and Marjo regarding Marjo's equity position in Twister that was granted to Marjo as a result of the false and misleading representations made by Defendants. Twister seeks a judicial declaration that Marjo has no equity interest in Twister, because Schuster, Ellman and Borom were induced to grant such equity interest to Marjo in reliance on Sullivan and Marjo's false and misleading representations.

**COUNT II – DECLARATORY JUDGMENT**
**LICENSE AGREEMENT VOID**

40.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1-39.

41.     There exists an actual controversy between Twister and Marjo regarding the validity and enforceability of the License Agreement that was induced in reliance on Marjo's and Sullivan's false and misleading representations.

42.     Twister seeks a judicial declaration that the License Agreement, including the payment obligations contained therein, is void, invalid and unenforceable, and that Twister owes Marjo no further payments thereunder.

DM3\9115192.1

## COUNT III – DECLARATORY JUDGMENT
## TRANSFER TO HOLDING

43.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1-42.

44.     There exists an actual controversy between the parties regarding the exchange of equity ownership interests in Twister to Holding.

45.     Plaintiffs seek a judicial declaration that the exchange of equity ownership interests in Twister to Holding did not require a vote of 90% of Twister's equity ownership interests, and that the exchange, approved by a majority of Twister's board of directors, was valid.

## COUNT IV – DECLARATORY JUDGMENT
## HOLDING PERMITTED TO ENGAGE IN MARKETS

46.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1-45.

47.     There exists an actual controversy between the parties regarding the effect of the non-competition agreement contained in the License Agreement on Holding, to the extent the Court determines the License Agreement to be not invalid and unenforceable.

48.     Plaintiffs seek a judicial declaration that, to the extent the Court determines the License Agreement to be not invalid and unenforceable, the non-competition provision in the License Agreement does not restrict Holding from activities other than in the markets for the licensing, sale or rental of cannabis cone rolling equipment and for CDB oil extraction and harvesting.

## COUNT V – DECLARATORY JUDGMENT
## NO USE OF MARJO IP

49.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1-48.

50.     There exists an actual controversy between the parties regarding whether the cannabis cone rolling machine designed, developed, and marketed by Twister after Marjo's

11

Consulting Agreement expired makes use of any ideas, trade secrets, intellectual property or know-how belonging to Marjo or Sullivan, or derivative therefrom.

51.    Plaintiffs seek a judicial declaration that the cannabis cone rolling machine designed, developed, and marketed by Twister after Marjo's Consulting Agreement expired does not use or incorporate any of Marjo's or Sullivan's ideas, trade secrets, intellectual property, or know-how.

## COUNT VI – FRAUDULENT INDUCEMENT

52.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1-51.

53.    Defendants engaged in knowing and intentional unlawful and deceitful conduct for the purpose of obtaining a substantial ownership interest in Twister, and favorable provisions in the License Agreement and Consulting Agreement.

54.    Defendants made knowingly false statements to Schuster, Ellman and Borom, as more fully set forth above, that Defendants had substantial knowledge, expertise and know-how in the design and development of a cannabis cone rolling machine, and that Defendants had previously developed a working prototype machine. Defendants made these false statements in order to induce Schuster, Ellman and Borom to provide Marjo with a substantial equity interest in Twister, including a large portion of units not subject to dilution, and to induce Twister to enter into the License Agreement and the Consulting Agreement.

55.    Defendants intended that Schuster, Ellman and Borom rely on their representations, and Schuster, Ellman and Borom reasonably relied on the representations to their detriment by granting Marjo a substantial equity ownership interest in Twister, and by entering into the License Agreement and the Consulting Agreement.

12

56.     As a result of Defendants' knowingly deceitful and unlawful misrepresentations, Twister has sustained and will continue to sustain significant financial damages.

## COUNT VII– UNJUST ENRICHMENT

57.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1-56.

58.     Marjo failed to design and develop a working prototype of a cannabis cone rolling machine, despite billing Twister and requiring Twister to spend far in excess of the amount estimated.

59.     Marjo has been unjustly enriched by the equity ownership interest in Twister that it received in reliance on its promises regarding its experience, expertise, intellectual property, and know-how related to the design and development of cannabis cone rolling machines.

60.     Marjo has been unjustly enriched by $126,236 that Twister paid under the Consulting Agreement.

61.     Marjo has been unjustly enriched by the equity interest it received in Twister.

62.     Marjo will be unjustly enriched if Twister pays the minimum distribution of at least $1,000,000 before December 31, 2022, under the License Agreement.

63.     Twister and Holding have been unjustly impoverished by the amounts paid to Marjo under the Consulting Agreement and by Marjo's equity ownership interest.

64.     No justification exists for Marjo's unjust enrichment.

65.     Twister and Holding have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Twister and Holding pray for judgment against Defendants, and each of them, jointly and severally, as follows:

1.     A declaration that Marjo has no equity ownership interest in Twister;

DM3\9115192.1

2.    An Order requiring Marjo to transfer its equity ownership interest in Twister to Holding;

3.    A declaration that the License Agreement, including (without limitation) the payment and non-competition provisions, is void, invalid, unenforceable, and of no force and effect;

4.    A declaration that, to the extent the Court determines the License Agreement to not be invalid and unenforceable, the non-competition provisions of the License Agreement do not restrict Holding from activities other than the markets for cannabis cone rolling equipment and for CDB oil extraction and harvesting;

5.    A declaration that the cannabis cone rolling machine designed and developed by Twister after the Consulting Agreement expired does not use or incorporate any of Marjo's or Sullivan's ideas, trade secrets, intellectual property, or know-how, or any intellectual property derivative therefrom;

6.    Award compensatory damages exceeding $75,000, in an amount determined by the Court, with interest at the maximum amount permitted by law;

7.    Award attorneys' fees, costs, and other expenses as permitted by law; and

8.    Grant such other and further relief as the Court may deem just and proper.

Dated:  October 17, 2022

Respectfully  submitted,

**DUANE MORRIS LLP**

<u>**OF COUNSEL:**</u>

David S. Godkin*
James E. Kruzer*
Birnbaum  &  Godkin,  LLP
1 Marina Park Drive, Suite 1410
Boston, MA  02210
Tel: (617) 307-6100
godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

*(*pro hac vice* application  forthcoming)

<u>*/s/ Richard L. Renck*</u>
Richard L. Renck (#3893)
Mackenzie M. Wrobel (#6088)
1201 North Market Street, Suite 501
Wilmington,  DE 19801
Tel: (302) 657-4900
rlrenck@duanemorris.com
mmwrobel@duanemorris.com

*Counsel for Plaintiffs Accelerant Twister,
LLC and Accelerant Holding, LLC*

DM3\9115192.1