**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ACCELERANT TWISTER, LLC, and ) \
ACCELERANT HOLDING, LLC, )
                             )
      Plaintiffs, )
                             )      Civil Action No. 22-1366-RGA
   v. )
                             )
MARJO, LLC and JOHN T. SULLIVAN, )
                             )
      Defendants. )

**REPORT AND RECOMMENDATION**

On October 17, 2022, Plaintiffs Accelerant Twister, LLC ("Twister") and Accelerant Holding, LLC ("Holding") (collectively, "Plaintiffs") filed this action against Defendants Marjo, LLC ("Marjo") and John T. Sullivan ("Sullivan") (collectively, "Defendants") alleging eight causes of action arising from the parties' failed business relationship. (D.I. 1). Plaintiffs then filed the First Amended Complaint, adding another cause of action. (D.I. 8). Defendants moved to dismiss Count VI (Fraudulent Inducement) and Count VII (Unjust Enrichment) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (D.I. 14).

Pending before me is Defendants' Motion to Dismiss Counts VI and VII of the First Amended Complaint. I have considered the parties' briefing, I heard oral argument on June 26, 2023, and I considered Plaintiff's post-argument letter submission (D.I. 30). For the reasons stated below, I recommend that Defendants' motion be GRANTED.

FILED

JUL 1 1 2023

U.S. DISTRICT COURT DISTRICT OF DELAWARE

## I.   BACKGROUND[1]

This case arises out of a failed business venture to create, develop, and manufacture a machine to roll uniform cannabis cones (otherwise known as marijuana cigarettes) at a high rate of production. (D.I. 8 at ¶ 5). In February of 2019, Sullivan, the managing member of Marjo, met with Grant Schuster to discuss the possibility of creating a machine that could automate the process of creating, weighing, and rolling cannabis cones. (*Id.* at ¶ 8). Schuster showed Sullivan the processes that he was using to make cannabis cones and asked whether Sullivan was capable of developing cone rolling equipment. (*Id.*). Sullivan told Schuster that he "had the ability to automate the process and develop cannabis cone rolling equipment." (*Id.*).

Based on that representation, Schuster introduced Sullivan to two potential business partners, Alan Ellman and Michael Borom, at a meeting in April 2019. (*Id.* at ¶ 9). At the April 2019 meeting, Sullivan made additional representations to Schuster, Ellman, and Borom regarding his technical expertise, know-how, and connections with vendors and suppliers to be able to build a prototype automatic filling, twisting, and weighing machine for cannabis cones. (*Id.* at ¶ 10). Sullivan also told them that he had spent time, between the initial February meeting with just Schuster and the April meeting, working on the creation, design, and development of a functional cannabis cone rolling machine. (*Id.* at ¶ 11). According to Plaintiffs, Sullivan also said that he could develop a prototype of a functioning cannabis cone rolling machine "for $55,000 of additional estimated consulting fees per the Letter of Intent with an output of 2,000 units [of cannabis cones] per hour." (*Id.* at ¶ 14).

---

[1]   Only facts pertinent to Defendants' motion to dismiss Counts VI and VII are included in this factual recitation.

Based on Sullivan's representations that he had the skills, knowledge, and connections to design and build a working prototype, Schuster, Ellman, and Borom thereafter agreed to form Twister as a limited liability company in which Marjo, Schuster, Ellman, and Borom would be equity owners and managers. (D.I. 8 at ¶ 17). They executed an operating agreement on September 9, 2019, amended and restated as of February 7, 2020 ("Operating Agreement"), that gave Marjo a 20% equity interest in Twister, a large portion of which was protected from dilution. (*Id.* at ¶ 18). Marjo, for its part, contributed intellectual property, trade secrets, and knowledge to the newly formed company, but it did not contribute capital. (*Id.*).

Not long after Twister's formation, Sullivan, Schuster, Ellman, and Borom also entered into two additional agreements: 1) a January 29, 2020 License Agreement that provided for the issuance of equity to Marjo as the licensor of technology, along with various non-consulting fee payments, and 2) a February 3, 2020 Consulting Agreement that allowed for Marjo to be compensated on an hourly basis for time spent designing, developing, and manufacturing the cannabis cone rolling machine. (*Id.* at ¶¶ 19, 20).

According to Plaintiffs, things did not go as expected. Defendants did not build the prototype at a cost or in a timeframe that was anticipated by Plaintiffs. (*Id.* at ¶ 25). For example, although Plaintiffs felt that Sullivan led them to believe that he had a complete design, one company reported that Sullivan's designs were actually only 60% complete. (*Id.* at ¶ 23). Apparently, certain elements for construction, like ways to connect parts, couplings, machined parts, and safety systems were omitted from the design. (*Id.* at ¶ 25). In addition, Sullivan repeatedly represented that his design that "automates the rolling process, weighs and controls the amount of cannabis in each cone ... can be built." (*Id.*). Plaintiffs learned, however, that Sullivan's design could not be built "without substantial additional time and cost" that they did not anticipate.

(*Id.*).   Indeed, a prototype was completed and installed on September 28, 2020, which was apparently 9 months behind schedule and significantly overbudget.  (*Id.* at ¶¶ 24, 32).   And, the prototype produced cannabis cone rolls at a rate of 80 per hour, less than the targeted output of 2,000 per hour.  (*Id.* at ¶ 28).

In total, Plaintiffs paid approximately $424,000, which was more than Plaintiffs estimated the design process would cost, and Defendants failed to produce a production prototype to specification.  (*Id.* at ¶ 32).   As a result, in September of 2020, Borom asked Defendants to stop charging Twister any additional fees under the Consulting Agreement.   (*Id.*).   The Consulting Agreement subsequently expired by its own terms.  (*Id.*).

Plaintiffs claim that they relied on the representations by Sullivan, on behalf of Marjo, and did so to their detriment.  (*Id.* at ¶ 17).   In reliance on Defendants' representations that they had the knowledge, expertise, and know-how to design and develop a cannabis cone rolling machine, Plaintiffs granted Marjo a substantial equity ownership interest in Twister, entered into the License and Consulting Agreements, and paid out significant funds for a prototype that failed to meet their expectations, budget, or timeframe.  (*Id.* at ¶¶ 17–20, 31–32).   Plaintiffs claim they were fraudulently induced to enter into the business venture with Defendants and, as a result, seek to strip Marjo of its equity interest in Twister and declare the License Agreement void.

Plaintiffs ultimately partnered with new vendors to develop a workable cannabis cone rolling machine that, Plaintiffs claim, does not use any of Marjo or Sullivan's intellectual property, technology, trade secrets, or know-how, nor does it use any technology derived from the same. (*Id.* at ¶ 35).   In connection with the new venture, Schuster, Ellman, and Borom formed Plaintiff Holding, and all members of Twister, including Marjo, were given the opportunity to exchange their Twister membership interest for a corresponding membership interest in Holding.  (*Id.* at ¶

36). All agreed to do so except Marjo. (*Id.*). So, as a result, Holding owns 84% of Twister; Borom is an owner of Holding; Ellman is an owner of Holding and an officer of Twister; Schuster is an owner of Holding and an officer of Twister; and Marjo owns 16% of Twister. (*Id.* at ¶¶ 4–7, 36; D.I. 17 at ¶¶ 101–02).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 545. Factual allegations do not have to be detailed, but should provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]").

Moreover, there must be enough factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted).

Rule 9(b) of the Federal Rules of Civil Procedure adds a heightened pleading standard for allegations of fraud. It requires a party alleging fraud or mistake to "state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b).

5

## III.   DISCUSSION

Defendants challenge the sufficiency of the allegations raised against them in Count VI for

Fraudulent Inducement and Count VII for Unjust Enrichment.   Each is analyzed in turn.

### A.   Count VI – Fraudulent Inducement.

Defendants argue that Plaintiffs' fraud in the inducement claim must be dismissed because

(1) it is barred by enforceable integration clauses, (2) it is not pled with sufficient particularity, and

(3) the identified statements are not actionable.[2]

### i.   Plaintiffs' Claim for Fraudulent Inducement Is Not Precluded by the Integration Clauses.

Delaware courts have found that a party "cannot promise, in a clear integration clause of a

negotiated agreement, that it will not rely on promises and representations made outside of the

agreement and then shirk its own bargain in favor of a 'but we did rely on those other

representations' fraudulent inducement claim." *Prairie Capital III, L.P. v. Double E Holding*

*Corp.*, 132 A.3d 35, 50 (Del. Ch. 2015) (citing *Abry Partners V, L.P. v. F & W Acq. LLC*, 891 A.2d

1032, 1057 (Del. Ch. 2006)).

Each of the License Agreement, Operating Agreement, and Consulting Agreement contain

integration clauses.   The Operating Agreement provides that the Agreement "constitutes the sole

and entire agreement" and "supersedes all prior and contemporaneous understandings, agreements,

representations and warranties, both written and oral, with respect to the subject matter." (D.I. 18

at 9).   The Consulting Agreement states that the agreement "supersedes any prior and

contemporaneous understandings, agreements or representation by or among the parties … written

or oral." (*Id.* at 9–10).   And the License Agreement provides that the agreement "supersedes any

---

[2]      Defendants advanced a variety of other arguments.   Because I ultimately recommend
granting Defendants' motion to dismiss, I do not address all their more minor or ancillary
arguments.

prior understandings, agreements or representations by or among the Parties hereto, or any of them, written or oral." (*Id.* at 10).

Delaware courts have "consistently ... respected the law's traditional abhorrence of fraud," recognizing that "there is a strong tradition in American law that holds that contracts may not insulate a party from damages or rescission resulting from the party's fraudulent conduct." *Abry Partners V*, 891 A.2d at 1058–1059. For this reason, Delaware courts "have not given effect to so-called merger or integration clauses that do not clearly state that the parties disclaim reliance upon extra-contractual statements .... [M]urky integration clauses, or standard integration clauses without explicit anti-reliance representations, will not relieve a party of its oral and extra-contractual fraudulent representations." *Id.* To bar a fraudulent inducement claim, "a contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract." *Prairie Capital III, L.P.*, 132 A.3d at 51 (internal quotations omitted) (citing *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004)).

Defendants argue that the integration clauses preclude Plaintiffs' ability to assert a claim for fraudulent inducement based on the allegedly fraudulent statements made by Defendants before the contracts were signed. When asked at oral argument to identify specific anti-reliance language in the integration clauses (or elsewhere), Defendants pointed to the integration clauses as a whole in each of the agreements. When asked to square their argument with Delaware cases like *Abry* and *Kronenberg* that make clear that generic integration clauses like the ones here are insufficient, Defendants pointed to *Evans v. Cantor Insurance Group, LP*, a case cited by Plaintiffs in their answering brief in opposition to the motion to dismiss but not addressed by Defendants in their reply. *Evans v. Cantor Insurance Group, LP.*, No. 21-1618-MAK, 2022 WL 1659162 (D. Del.

May 25, 2022).  According to Defendants, the Court in *Evans* permitted a standard integration clause to serve as an anti-reliance clause sufficient to bar a fraud claim.

That is not the holding in *Evans*.  The plaintiff in *Evans*, an experienced business executive, claimed he was owed additional compensation from a stock-sale transaction "based on alleged oral promises from one of the company's owners before he signed the two contracts selling his employer's stock and defining his compensation from the transaction." *Id.* at *1.  The court held the plaintiff could not sue "for a breach of oral contracts which he agreed," as evidenced by "his signature on an integration clause," "are superseded by the written transaction agreements which do not pay him a transaction bonus[.]" *Id.*  The court's ruling in *Evans*, a case not bearing on fraud or the anti-reliance language required by Delaware to preclude fraud claims, does not speak to Count VI of the present action. *See id.* at *7 (noting that plaintiff "does not allege [a fraudulent inducement] claim").  Plaintiffs' reliance on *Evans* is further undermined by the court's later ruling. After amending the operative complaint to add a claim for fraudulent inducement, the court held that the language in the integration clause was insufficient to bar the claim because it did not "'clearly and unambiguously' preclude Mr. Evans' reliance on extra-contractual statements made before he signed the transaction documents." *Evans v. Cantor Insurance Group, LP*, No. 21-1618-MAK, 2022 WL 3908005, at *3 n.8 (D. Del. Aug. 30, 2022) (quoting *Kronenberg*, 872 A.2d at 593).

Absent "language that, when read together, can be said to add up to a clear anti-reliance clause," Delaware courts have declined to enforce standard integration clauses against fraudulent inducement claims. *See Kronenberg*, 872 A.2d at 593 (finding fraud claims not barred by a nearly identical and standard integration clause); *cf. Abry Partners V*, 891 A.2d at 1057 (quoting language that has been found sufficient to bar a claim for fraudulent inducement: "[e]ach of the Parties ...

acknowledges that the Party has not executed or authorized the execution of this instrument in reliance upon any such promise, representation, or warranty not contained herein."). There is no such language here. Accordingly, I cannot find at this stage that Count VI is barred by the integration clause.

### ii. Plaintiffs Plead Fraud with Particularity, In Part.

Turning now to the sufficiency of the pleading, to state a claim for fraudulent inducement under Delaware law, a plaintiff must satisfy all the elements of common-law fraud. *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, No. 7906-VCG, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018) ("Under Delaware law, the elements of fraudulent inducement and fraud are the same."). Those elements are:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

*E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461–62 (Del. 1999); *see also FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 857 (Del. Ch. 2016), *aff'd sub nom. A & R Logistics Holdings, Inc. v. FdG Logistics LLC*, 148 A.3d 1171 (Del. 2016).

In addition, under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud or mistake." In other words, the First Amended Complaint must provide "all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." *U.S. ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). The First Amended Complaint "cannot simply

allege boilerplate and conclusory allegations[.]" *Mkt. Am., Inc. v. Google, Inc.*, No. 09-494-GMS, 2010 WL 3156044, at *4 (D. Del. Aug. 9, 2010) (internal quotations omitted). It must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

Defendants contend that Plaintiffs' fraudulent inducement claim fails for lack of particularity, arguing somewhat generally that they cannot tell which statements are alleged to have been fraudulent, and more specifically that Plaintiffs failed to plead the who, what, when, where, and why of the events at issue. Plaintiffs identify six allegedly fraudulent representations in the First Amended Complaint:

1. that, during the February 2019 meeting, "Sullivan told Schuster that he had the ability to automate the process of cannabis cone rolling and to develop cannabis cone rolling equipment" (D.I. 18 at 2, 5, *citing* D.I. 8 at ¶ 8);

2. "that Defendants possessed the technical expertise and know-how to create and build a production cannabis cone rolling machine" (D.I. 18 at 2, 5, *citing* D.I. 8 at ¶ 10);

3. "that Sullivan had knowledge, know-how and extensive personal connections from past efforts to select vendors and suppliers of equipment, software, fixtures and tooling to successfully build a prototype automatic cone filling, twisting and weighing machine" (D.I. 18 at 2, 5, *citing* D.I. 8 at ¶ 10);

4. "that Defendants had, during the months between Sullivan's first meeting with Schuster and the April meeting with Schuster, Ellman and Borom, been engaged in the creation, design and development of a functional cannabis cone rolling machine" (D.I. 18 at 2, 5, *citing* D.I. 8 ¶ 11);

10

5. "that Marjo had spent considerable time, effort and expense developing provisional patent pending designs, know-how and trade secrets for a machine that automates the cannabis cone rolling process" (D.I. 18 at 2, 5, *citing* D.I. 8 ¶ 11); and

6. "In a Letter of Intent dated June 30, 2019, Defendants further represented to Plaintiffs that they could develop a prototype of a functioning cannabis cone rolling machine for $55,000 of additional estimated consulting fees (*i.e.*, not more than $80,000 in total) with an output of 2,000 units per hour." (D.I. 18 at 2, 6, *citing* D.I. 8 ¶¶ 12, 24).

Plaintiffs confirmed at the June 26 hearing that these statements—as presented on pages two, five, and six of their Answering Brief—form the basis of Count VI.[3]  (D.I. 18 at 2, 5–6).

Representation one describes the initial meeting between Sullivan and Schuster in February of 2019, and it provides the approximate date, the party making the representation, the substance of the representation, and to whom the representation was made.  Representations two, three, four, and five follow an overview paragraph in the First Amended Complaint that attributes those representations to the April 2019 meeting; Plaintiffs' Answering Brief confirms the same.  (D.I. 18 at 2).  In the statements attributed to the April 2019 meeting, Plaintiffs identify the party making the representation, the substance of the representation, to whom the representation was made, and the approximate date of each statement.

---

[3]    At argument, Plaintiffs were unable to identify where in the Letter of Intent the sixth representation could be found, so I invited counsel to file a letter on this point. In their post-hearing letter (D.I. 30), Plaintiffs included citations to *additional* alleged misrepresentations from the First Amended Complaint. But Plaintiffs confirmed during the hearing that the representations on which they were relying for their fraudulent inducement claim were those set forth on page 2 and repeated on pages 5–6 of their Answering Brief. To the extent Plaintiffs' post-hearing letter attempts to sweep in additional misrepresentations beyond those raised in their Answering Brief and confirmed at oral argument, the Court declines to consider them now.

More detail regarding the specific date of the meeting, the identity of any other individuals at the meeting, and the location of the meeting might have been helpful for representations one through five, but I find that under these circumstances the failure to include the precise date, time, and location is not fatal. No one alleges that there were a multitude of meetings in early 2019 regarding the Twister business project between a variety of unknown individuals. Rather, it appears that based on the two meetings, the parties thereafter executed a Letter of Intent in July, formed the Twister entity in September, and executed the three relevant contracts in January and February of 2020.

Under these circumstances, I am mindful that although "date, place, and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are [pled] sufficiently 'to place the defendants on notice of the precise misconduct with which they are charged....'" *ING Bank, fsb v. PNC Fin. Servs. Grp., Inc.*, 629 F. Supp. 2d 351, 354 (D. Del. 2009) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)); *California Publ. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) ("Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"). I find that, regarding setting forth the who, what, when, where, and how, Plaintiffs have met their burden under Rule 9(b) with respect to representations one through five.

On the "newspaper story" requirements, representation six is not quite as clear. In Plaintiffs' Answering Brief, they write "In a Letter of Intent dated June 30, 2019, Defendants further represented to Plaintiffs that they could develop a prototype of a functioning cannabis cone rolling machine for $55,000 of additional estimated consulting fees...." (D.I. 18 at 2, 6, *citing* D.I.

8 ¶¶ 12, 24).  But the cited paragraphs of the First Amended Complaint do not contain that averment.  Paragraph 14 of the First Amended Complaint does, but it says something slightly different: "Defendants also represented that they could develop a prototype of a functioning cannabis cone rolling machine for $55,000 of additional estimated consulting fees per the Letter of Intent with an output of 2,000 units per hour."  This paragraph follows representations two, three, four, and five, which are attributed via an overview paragraph to the April 2019 meeting.  And the Letter of Intent is dated July 30, 2019, not June 30.  As a result, it is not entirely clear whether the sixth representation was said at the April 2019 meeting and later memorialized, or if the representation should be attributed to June 2019 or perhaps to July 2019 when the Letter of Intent was signed.  With that, I find it difficult to say that Defendants are on notice of the alleged fraudulent statement: was it an oral representation in April, June, or July, or is there something particular in the Letter of Intent that is alleged to have been false?  Representation six lacks the particularity required under Rule 9(b).

Having determined the "newspaper story" requirements, I now turn to whether Plaintiffs sufficiently pled facts to support the required elements of a fraud claim under Delaware law.  Representations four and five are in peril because Plaintiffs do not sufficiently allege falsity or that Defendants knew the statements were false when said.  For these statements, Plaintiffs failed to plead "why the statements were fraudulent" or that they had "knowledge … that the representation was false." *Rei Holdings, LLC v. LienClear - 0001*, No. 18-1401-MN, 2020 WL 6544635 (D. Del. Nov. 6, 2020) (quoting *Institutional Investors Grp.*, 564 F.3d at 253); *E.I. DuPont de Nemours*, 744 A.2d at 461–62.  Although it is true that knowledge may be pled generally for this type of fraud, a plaintiff must still allege "sufficient facts" from which it can be "reasonably inferred" that

13

both the statements were false and that "defendants were in a position to know it." *Mkt. Am., Inc.*, 2010 WL 3156044, at \*4.  Plaintiffs did not do so.

Nowhere does the First Amended Complaint allege or articulate a reasonable basis to infer that Defendants did *not* spend time working on the design (representation four) or that Marjo did *not* spend time developing a provisional patent design along with knowledge and trade secrets (representation five).  Plaintiffs plead conclusory allegations that Defendants were not at work developing designs because their subsequent efforts were behind schedule, costly, and generally unsatisfactory. (*See* D.I. 8 at ¶¶ 22–23 (suggesting it "became apparent" that these representations "had been false and misleading" because another company considered the designs "only 60% complete"); *id.* at ¶ 31 (concluding that "Defendants' inability to design and develop a working prototype of the machine for the amount promised and in the promised timeframe, as well as repeated delays and requests for substantial additional funds, made it apparent that Defendants had misrepresented their experience ... in designing ... cannabis cone rolling machines"); *id.* at ¶ 32 (claiming that "Twister paid Marjo approximately $126,000 under the Consulting Agreement, in addition to [other] payments ... despite Defendants' representations that they had already spent significant time and money preparing to produce a working prototype")). *Cf. AJZN, Inc. v. Yu*, No. 13-149-GMS, 2015 WL 331937, at \*9 (D. Del. Jan. 26, 2015) ("Mere evidence of a party's failure to keep a promise does not prove the promise was false when made.") (internal quotations omitted). Instead, the relevant facts that Plaintiffs plead show that Defendants *did* submit a provisional patent, that Defendants *did* believe that they had protectable trade secret information, and that Defendants *did* spend time bringing the prototype to fruition (albeit not to Plaintiffs' satisfaction). (*See, e.g.*, D.I. 8 at ¶¶ 15–16, 25, 27–28).

The sixth representation is insufficiently pled for two additional reasons. First, setting aside the lack of particularity, this averment appears to be false on its face. A review[4] of the Letter of Intent reveals that it contains no such statement.[5] Second, the sixth representation at least arguably falls into the category of non-actionable forecasts or estimates. "That a statement of opinion did not prove to be an accurate forecast of the future does not mean that the predicting party misstated any actual fact that could serve as the basis for reasonable reliance." *Appel v. Berkman*, 180 A.3d 1055, 1060 n.25 (Del. 2018) (quoting *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 148 (Del. Ch. 2004)). Thus, for several reasons, the sixth representation fails to support a claim for fraudulent inducement.

In short, the first three statements are sufficiently pled, given the facts of this case, but the latter three are not. I turn now to whether, even though sufficiently pled, the statements are actionable.

### iii. The Identified Statements are Not Actionable Under Delaware Law.

Not all statements can support a claim for fraudulent inducement. "Actionable statements misstate 'material facts' that can be measured or known." *Garner v. Global Plasma Solutions,*

---

[4]   As a general matter, a court ruling on a motion to dismiss may not consider matters outside the pleadings. The Third Circuit, however, recognizes "an exception" to the general rule: "a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgement." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted) (explaining that this exception "seeks to prevent … is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent"). Here, all the agreements, including the Letter of Intent, are integral to the First Amended Complaint and explicitly relied on by Plaintiffs.

[5]   Plaintiffs' post-hearing submission failed to cite to a representation in the Letter like the one set forth in Paragraph 14 of the First Amended Complaint. Instead, Plaintiffs string together a variety of statements that obligate Plaintiffs to pay Defendants, cap the payments from Plaintiffs to Defendants, and provide for milestone bonuses to Defendants if they are actually able to build a working prototype. (*See* D.I. 30).

*Inc.*, 590 F.Supp.3d 738, 744 (2022) (citations omitted). "Under Delaware law, a person's optimistic statements about his 'skills, experience, and resources' are 'mere puffery and cannot form the basis for a fraud claim.'" *Clark v. Davenport*, No. 2017-0839-JTL, 2019 WL 3230928, at *12 (Del. Ch. July 18, 2019) (quoting *Solow v. Aspect Res.*, No. 20397, *LLC*, 2004 WL 2694916, at *3 (Del. Ch. Oct. 19, 2004)). "The law is rightly reluctant to find that mere expressions of opinion about the future can buttress a claim of fraud." *Appel*, 80 A.3d at 1060 n.25 (quoting *Metro Commc'n Corp. BVI*, 854 A.2d at 148; *see also Great Lakes Chemical Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001) ("expressions of opinion" and "[p]redictions about the future cannot give rise to actionable common law fraud"). To be sure, "vague and general statements of optimism are non-actionable precisely because they are not material—a reasonable investor would not base decisions on such statements." *Fan v. StoneMor Partners LP*, 927 F.3d 710, 716 (3d Cir. 2019) (internal quotations omitted).

Defendants argue that Plaintiffs' identified statements all amount to non-actionable statements regarding their skills, experience, contacts, and predictions about the future. Plaintiffs disagree, but also argue that, in any event, I cannot decide whether the statements are actionable at the motion to dismiss stage. I agree with Defendants.

Plaintiffs' argument that I should not decide whether the statements are actionable at this stage is in tension with the fact that Delaware courts regularly dismiss fraud claims for relying on unactionable statements, like those in the First Amended Complaint. *See, e.g., Urdan v. WR Cap. Partners, LLC*, No. 2018-0343-JTL, 2019 WL 3891720, at *18 (Del. Ch. Aug. 19, 2019), *aff'd*, 244 A.3d 668 (Del. 2020) (holding statements "are puffery" on which "a plaintiff cannot reasonably rely ... for purposes of a fraud claim" and dismissing fraud claim); *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VCP, 2008 WL 5352063, at *8 (Del. Ch.

Dec. 23, 2008) (holding statements to be "mere pun and puffery" where defendant "promised that with his expertise and management he would expand the mail business" and that existing "postal business and the Fleet were just a 'postage stamp of [what the defendant could] orchestrate this mail business to be'"); *Lazard Debt Recovery GP, LLC. v. Weinstock*, 864 A.2d 955, 971 (Del. Ch. 2004) (holding statements in which party touted its "ideal work environment" and "unique resources" to be "at best enthusiastic puffery that no rational prospective investor ... would find material"). Thus, it seems to me that the Court need not wait until after discovery to determine that these statements are not actionable under Delaware law.

Representations one ("ability"), two ("technical expertise"), and three ("knowledge, know-how and extensive personal connections") amount to Defendants' "optimistic statements praising [their] own 'skills, experience, and resources.'" *Airborne Health, Inc. v. Squid Soap, LP*, No. 4410-VCL, 2010 WL 2836391, at *8 (Del. Ch. Jul 20, 2010) (quoting *Solow, LLC*, 2004 WL 2694916, at *2). The identified representations show Defendants touting their technical expertise, knowledge, know-how, and personal connections. These representations do not contain misstatements about "'material facts' that can be measured or known." *Garner*, 590 F.Supp.3d at 744. Instead, they are exactly the kind of "classically vague statements that a commercial party routinely makes during deal-making courtship," and thus they are not actionable. *Airborne*, 2010 WL 2836391, at *8.

Accordingly, I recommend dismissal of Count VI.

## B. Count VII – Unjust Enrichment.

Count VII asserts a claim for unjust enrichment. (D.I. 8 at ¶¶ 69–77). A claim for unjust enrichment under Delaware law requires: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence

of a remedy provided by law." *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999) (citing *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998)). Defendants do not challenge that Plaintiff pled the required elements. Rather, Defendants argue that Plaintiffs' claim must be dismissed because it fails to meet the heightened pleading standard of Rule 9(b), and because the parties' relationship is governed by contract. Plaintiffs counter that their claim for unjust enrichment is permissibly pled in the alternative to their claim for breach of contract and, moreover, that because the validity of the contracts is in question by virtue of the fraudulent inducement claim, the unjust enrichment claim may stand.

"A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009). Each alleged enrichment at issue in this case arises from a contract between the parties. At oral argument, the parties agreed that the only valid basis for an unjust enrichment claim where there is a valid contract is through a fraudulent inducement claim, which would serve to void the contract. Plaintiffs further agreed that where a valid contract exists, an unjust enrichment claim does not. Accordingly, because I recommend dismissal of Plaintiffs' fraudulent inducement claim, I also recommend dismissal of Count VII. At the same time, because Plaintiffs' fraud claims are not pled with particularity,[6] Count VII must follow suit because it is based on the same underlying conduct. *See Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 285 (D. Del. 1993) (requiring an unjust enrichment claim to be pled with particularity where it was based on the same basic facts as fraud claim).

---

[6]    At oral argument, Plaintiffs agreed that Rule 9(b) applies to claims for unjust enrichment based on fraudulent conduct.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the District Court grant Defendants' motion to dismiss Counts VI and VII of the First Amended Complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the Court's website.

The Honorable Laura D. Hatcher
UNITED STATES MAGISTRATE JUDGE

Dated: July 11, 2023

19